USDC SCAN INDEX SHEET

















R1R    4/24/06    10:12

3:04-CV-01479   TREKEIGHT LLC V. SYMANTEC CORPORATION

*121*

*P/A.*

FILED

06 APR 21 PM 3: 28

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

**NUNC PRO TUNC**

APR 11 2006

1   Norman J. Blears (95600)
    Chad R. Fuller (190830)
2   HELLER EHRMAN LLP
    4350 La Jolla Village Drive, 7th Floor
3   La Jolla, California 92122
    Telephone: (858) 450-8400
4   Facsimile: (858) 450-8499

5   Michael P.A. Cohen
    Sarah Pojanowski
6   HELLER EHRMAN LLP
    1717 Rhode Island Avenue, NW
7   Washington, DC 20036
    Telephone: (202) 912-2000
8   Facsimile: (202) 912-2020

9   Attorneys for Defendant
10  SYMANTEC CORPORATION

11                    UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13  TREKEIGHT, LLC,                        Case No.: 04 CV 1479 H (BLM)

14                           Plaintiff,    **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
15       v.                                SYMANTEC'S MOTION IN LIMINE
                                           TO EXCLUDE EXPERT TESTIMONY
16  SYMANTEC CORPORATION,                  OF ERIK LAYKIN**

17                           Defendant.    Hon. M. L. Huff
                                           Courtroom 13
18                                         Date: May 8, 2006
                                           Time: 10:30 a.m.
19

20

21

22

23

24        **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

25

26

27

28

ORIGINAL

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION .......................................................................................................... 1

II.  LEGAL ARGUMENT ................................................................................................... 2

    A.  Mr. Laykin Has Not Conducted Any Computer Science Analysis Relevant to the Issues in This Case: The Behavior of a Spyware Nuker Downloader File on September 5, 2003 ........................................................................................... 3

    B.  TrekEight Cannot Overcome the Adverse Evidentiary Inference against It with Expert Testimony that Admittedly Does Not and Cannot Assess the 2003 Behavior of the Spyware Nuker Downloader File ........................................ 4

    C.  Mr. Laykin's "Negligence" Testimony Is Beyond His Expertise, Failed To Consider Material Record Evidence, Is Misfocused, and Draws Impermissible Legal Conclusions ........................................................................ 7

    D.  Mr. Laykin Disqualified His "Economic" and "Public Opinion" Comments, which Cannot Be Considered ................................................................................ 9

    E.  Mr. Laykin's "Rebuttal" Report Was Not Disclosed Anywhere Close to Court-Ordered Deadlines and Cannot Be Considered .......................................... 10

III.  CONCLUSION ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdvantaCare Health Partners, LP v. Access IV*
2004 U.S. Dist. LEXIS 16835 (C.D. Cal. Aug. 17, 2004) .......................................... 4

*Aguilar v. International Longshoremen's Union Local No. 10*
966 F.2d 443 (9th Cir. 1992) ....................................................................................... 9

*Andrews v. Metro North Commuter Railroad*
882 F.2d 705 (2d Cir. 1989) ........................................................................................ 9

*AT&T Wireless Services of California, LLC v. City of Carlsbad*
308 F. Supp. 2d 1148 (S.D. Cal. 2003) ...................................................................... 3

*Barber v. United Airlines, Inc.*
17 Fed. Appx. 433 (7th Cir. 2001) .............................................................................. 6

*Bourjaily v. United States*
483 U.S. 171 (1987) ...................................................................................................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993) ............................................................................................. 2, 6, 10

*Heary Brothers Lightning Protection Co. v. Lightning Protection Institute*
287 F. Supp. 2d 1038 (D. Ariz. 2003) ........................................................................ 8

*Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*
2003 U.S. Dist. LEXIS 5247 (E.D. Ill. Apr. 2, 2003) ............................................... 6

*In re Imperial Credit Industries Securities Litigation*
252 F. Supp. 2d 1005 (C.D. Cal. 2003) ...................................................................... 5

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999) ................................................................................................... 2, 6

*Lee v. City of Novato*
2004 U.S. Dist. LEXIS 18195 (N.D. Cal. Sept. 7, 2004) ......................................... 10

*Lifewise Master Funding v. Telebank*
374 F.3d 917 (10th Cir. 2004) ..................................................................................... 7

*Mukhtar v. California State University*
299 F.3d 1053 (9th Cir. 2002) ................................................................................... 3, 9

*Quevedo v. Trans-Pacific Shipping, Inc.*
143 F.3d 1255 (9th Cir. 1998) .................................................................................... 10

*Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*
982 F.2d 363 (9th Cir. 1992) ....................................................................................... 5

ii

*United States v. 99.66 Acres of Land*
   970 F.2d 651 (9th Cir. 1992) .................................................................. 7

*Vanderpool v. Edmondson*
   2005 U.S. Dist. LEXIS 8611 (E.D. Tenn. Mar. 23, 2005) .......................... 9

**Rules**

Federal Rule of Evidence 402 ...................................................................... 3

Federal Rule of Evidence 702 ........................................................... 1, 2, 7, 10

Federal Rule of Evidence 704 ...................................................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SYMANTEC'S MOTION IN LIMINE TO
EXCLUDE EXPERT TESTIMONY OF ERIK LAYKIN          CASE NO.: 04CV1479 H (BLM)

Pursuant to Federal Rule of Evidence 702, Defendant Symantec Corporation ("Symantec") respectfully submits this Memorandum in support of its Motion in Limine to Exclude Expert Testimony of Erik Laykin, as described in his expert witness report dated February 16, 2006 (attached to the Fuller Declaration as Ex. A, hereinafter "the Laykin Report") and in his March 23, 2006 rebuttal report and declaration (attached to the Fuller Declaration as Ex. B, hereinafter "the Laykin Rebuttal").

I.    INTRODUCTION

Symantec makes computer security software, including Norton AntiVirus® and related products that detect and protect computers from viruses, worms, "trojan horses," and other risks. This case stems from Symantec's detection and description of a "downloader" file called SpyareNukerInstaller.exe in September 2003. More specifically, on September 5, 2003, one of Symantec's "security response" engineers analyzed this file and classified it as "adware" — a computer file that facilitates delivery of Internet advertising.

The record in this case is set forth more fully in Symantec's Motion for Summary Judgment and Memorandum in Support, filed this same day and scheduled for hearing May 22. Relevant here, the "downloader" file Symantec detected in 2003 is a computer file that connected to remote computers called "servers" and received additional files and data. TrekEight, however, destroyed its server logs, which show what TrekEight delivered to computer users through the downloader file. The court awarded Symantec an adverse evidentiary inference that this evidence would have supported Symantec's classification.

Left with no evidence to contest Symantec on this question, TrekEight has proffered the expert testimony of Erik Laykin, a computer forensic analyst. Mr. Laykin executed various versions of Spyware Nuker on clean computers in 2005 and 2006, and concludes that the Spyware Nuker program is not adware. He further offers opinions on Symantec's practices, as well as unrelated views on Symantec's market position and public opinion.

Because Mr. Laykin's analysis is based on observations of Spyware Nuker today, it bears no relation to the question of the SpywareNukerInstaller.exe file's behavior in September 2003, and

1

must be excluded. In short, what happens today bears no relevance to what happened yesterday, just as what happens tomorrow does not bear on today. That is particularly the case here, where TrekEight's versions of Spyware Nuker since at least mid-2004 are entirely different programs based on entirely different code. In this regard, Mr. Laykin admitted at deposition that the SpywareNukerInstaller.exe file Symantec detected in 2003 no longer functioned in his tests, because the servers the file contacted no longer respond. He therefore cannot draw any conclusions based on his analysis of the file Symantec detected, and cannot be allowed to do so. And his conclusions based on how subsequent Spyware Nuker files behave today is not relevant: Symantec did not and does not detect those programs.

Mr. Laykin's remaining opinions and conclusions are: drawn from selected third parties; ignore critical record evidence; and relate to economic and public opinion topics that he expressly admitted in deposition testimony are beyond his expertise. These remaining opinions and conclusions must therefore be excluded under Federal Rule of Evidence 702 as well.

## II.   LEGAL ARGUMENT

Rule 702 requires that before expert testimony can be admitted, a district court, in its "gatekeeper" role, must determine

> if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Rule, through the 2000 amendments that added the language quoted above, codifies the holdings of the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Daubert* requires trial judges evaluating expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592–93. The court must exclude testimony based on "subjective belief or unsupported speculation." *Id.* at 590.

Federal law is equally clear that district courts are to act as "gatekeepers" under Rule 702, "[ensuring] that any and all scientific testimony is not only relevant, but reliable." *Id.* at 589. This

2

responsibility is "vital to ensure accurate and unbiased decision-making by the trier of fact." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–64 (9th Cir. 2002). As the Ninth Circuit explained in *Mukhtar*, this is largely due to the "aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Id.* Accordingly, the proponent of expert testimony has the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *AT&T Wireless Servs. of Cal., LLC v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1157 (S.D. Cal. 2003) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). And, of course, the testimony must meet the pre-amendment requirement of Rule 702 that it must assist the trier of fact to understand the evidence or determine a fact at issue.

### A. Mr. Laykin Has Not Conducted Any Computer Science Analysis Relevant to the Issues in This Case: The Behavior of a Spyware Nuker Downloader File on September 5, 2003

To be admissible, Mr. Laykin's expert testimony must be relevant to the issues presented in this case. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Mr. Laykin, however, admittedly did not conduct computer science analysis regarding the capabilities or behavior of the SpywareNukerInstaller.exe file in 2003 (or 2004):

> Q.  What steps have you taken to assess the behavior of the Spyware Nuker downloader in 2003?
>
> A.  Well, we are only able to determine what the downloader does in 2005 and 2006, because we didn't review the 2003.

Laykin Dep. Tr. at 149:13–17.[1] Mr. Laykin could not download the 2003 version of Spyware Nuker from the Internet using the SpywareNukerInstaller.exe file or replicate how the file operated at the time of Symantec's detections. Laykin Dep. Tr. at 99:15–100:20. Mr. Laykin was not even aware whether he analyzed the version of the Spyware Nuker downloader in the marketplace in September 2003. Laykin Dep. Tr. at 104:4–10.

---

[1] Relevant excerpts of the Laykin deposition are attached as Ex. C to the Fuller Declaration.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SYMANTEC'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF ERIK LAYKIN                    CASE NO.: 04CV1479 H (BLM)

Mr. Laykin also did not decompile the file's source code and does not base his testimony on observations of decompiled source code. Laykin Dep. Tr. at 102:10–23. He conducted no analysis of TrekEight's servers or server programs. Laykin Dep. Tr. at 10:4–9, 23:6–10; 139:11–14. Mr. Laykin did not even request server programs or server logs from TrekEight, though he admits they would help determine how the program functioned in 2003. Laykin Dep. Tr. at 141:19–22, 145:22–146:3.

Mr. Laykin, in short, takes none of the analytical steps that a computer scientist would take to determine how a file behaved in the past. Instead, he confines his analysis to observations regarding how Spyware Nuker behaved at the time of his analysis in 2005 and 2006. Laykin Dep. Tr. at 149:13–17. Those opinions are not relevant here, as Symantec has not detected the versions of Spyware Nuker available during his observation period as adware. As a result, this Court should exclude Mr. Laykin's testimony in this case.

**B.   TrekEight Cannot Overcome the Adverse Evidentiary Inference against It with Expert Testimony that Admittedly Does Not and Cannot Assess the 2003 Behavior of the Spyware Nuker Downloader File**

The Court's October 26, 2005 Discovery Order awards Symantec an adverse evidentiary inference that the server logs plaintiff TrekEight destroyed would have supported Symantec's classification.[2] The purpose of the inference is to "place the risk of an erroneous judgment on the party who wrongfully created the risk [and] restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *AdvantaCare Health Partners, LP v. Access IV*, 2004 U.S. Dist. LEXIS 16835, at *13 (C.D..Cal. Aug. 17, 2004).

This Court has already held that TrekEight's destruction of its server logs impairs Symantec's ability to present a full defense, based on "the information exhibited on server logs,

---

[2] *See* October 26, 2005 Order Granting in Part and Denying in Part Defendant's Motion to Compel Server Logs and Denying Plaintiff's Motion for Reimbursement of Costs and Fees Pursuant to Rule 30(g)(1) of the Federal Rules of Civil Procedure at 11 (hereinafter "October 2005 Discovery Order"), attached to the Fuller Declaration as Ex. D.

4

their significance to expert analysis, and the inability to replicate such data from other sources."

October 2005 Discovery Order at 9. TrekEight cannot now compound that impairment by

proffering overbroad expert conclusions that Symantec cannot address without the destroyed

evidence. And that is precisely what TrekEight is trying to do through its expert testimony.

More specifically, Mr. Laykin admits that his analysis and observations are limited to

Spyware Nuker's behavior in 2005 and 2006, and he admits he cannot determine what the

SpywareNukerInstaller.exe file received from TrekEight's servers and how it behaved in 2003 or

2004. Laykin Dep. Tr. at 104:22–105:7, 149:13–17. But he does not confine his testimony to these

factual parameters. Instead, Mr. Laykin broadly opines that Spyware Nuker is not and has never

been adware. *See* Laykin Report at 26. Mr. Laykin's testimony in this regard must be excluded,

because TrekEight destroyed the only evidence that would permit Symantec to defend itself fully

against Mr. Laykin's sweeping conclusions, which, as stated, are admittedly not based on any

analysis of the SpywareNukerInstaller.exe computer file's behavior in 2003 or 2004. *Unigard Sec.*

*Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (upholding district

court's exclusion of plaintiff's expert witness testimony, because "'plaintiff's destruction of key

evidence [rendered] a full defense impossible'") (citations omitted).

TrekEight likewise cannot overcome the adverse evidentiary inference by proffering Mr.

Laykin's opinions based on the testimony of other "experts" and "cherry-picking" the information

he considers in reaching his conclusions. Expert testimony is not admissible if it is based on the

opinion of another expert who does not testify. *See, e.g., In re Imperial Credit Indus. Sec. Litig.*,

252 F. Supp. 2d 1005, 1013 (C.D. Cal. 2003) (citing *Tokio Marine & Fire Ins. Co. v. Norfolk & W.*

*Ry.*, 1999 WL 12931, at *4 (4th Cir. 1999)).

Mr. Laykin bases his testimony in part on a website description of Spyware Nuker by Roger

Karllson of Kephyr.com, as well as comments about Spyware Nuker by a website called

SpywareWarrior.com. Mr. Laykin has not spoken with Mr. Karllson of Kephyr, and does not know

the identity of SpywareWarrior. Laykin Report at 121:20–21, 125:18–22. He does not know what

software files they tested. Laykin Dep. Tr. at 121:22–122:13, 125:23–126:4. He did not oversee or

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SYMANTEC'S MOTION IN LIMINE TO
EXCLUDE EXPERT TESTIMONY OF ERIK LAYKIN                    CASE NO.: 04CV1479 H (BLM)

direct their analyses, nor does he know the nature, extent, or conditions of the tests they performed. *Id.* at 121, 126. Allowing Mr. Laykin to base any testimony on these references would improperly deprive Symantec of any "opportunity for meaningful adversarial testing of [those] opinions." *Imperial Credit*, 252 F. Supp. 2d at 1012. Mr. Laykin's proposed testimony is not only insufficient to overcome the adverse inference, it is inadmissible as a matter of law.

Further, Mr. Laykin cannot avoid the adverse evidentiary inference by "cherry-picking" the information that he considers in reaching his conclusions. *See, e.g., Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, 2003 U.S. Dist. LEXIS 5247, at *6 (N.D. Ill. Apr. 2, 2003) (barring expert testimony where expert failed to adequately explain why he ignored certain facts and data while accepting others). This sort of analysis does not comply with *Daubert. See Holden Metal*, 2003 U.S. Dist. LEXIS 5247, at *6 (citing *Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437 (7th Cir. 2001)); *see also Kumho Tire*, 526 U.S. at 152 (*Daubert* requires the trial court to determine that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

Mr. Laykin's testimony is full of selective consideration of the record. In his deposition, Mr. Laykin admits that he does not consider any contrary reviews of Spyware Nuker to be "relevant to the conclusions [he] arrived at [sic]," but he willingly accepts the reliability of independent conclusions that agree with his conclusions without further documentation because they are "accurate." Laykin Dep. Tr. at 128:7–13, 128:25–129:3. Mr. Laykin is prepared to testify that certain anti-spyware companies have "agreed" not to detect Spyware Nuker. Laykin Report at 24. He does not mention the fact that five of the six companies he references did detect Spyware Nuker in 2003 and early 2004 when Symantec analyzed and classified the file. *See* Documents Recording Spyware Nuker Detections By Companies Discussed in the Laykin Report, attached to the Fuller Declaration as Exs. E, F. He also elects to completely disregard the other computer security companies that detected various Spyware Nuker files. *See* Documents Recording Spyware Nuker Detections By Other Companies, attached to the Fuller Declaration as Exs. G, H.

6

Even with regard to the Internet commentators he cites, Mr. Laykin cherry-picks the information on which he relies. He cites portions of those opinions and ignores other portions that undermine his testimony. *See* Roger Karllson, Kephyr, Spyware Nuker (expressing serious reservations regarding Spyware Nuker software), attached to the Fuller Declaration as Ex. I; The Spyware Warrior List of Rogue Anti-Spyware Products and Websites, at 32 (noting several factors contributing to Spyware Nuker Version 1's "deservedly poor reputation"), attached to the Fuller Declaration as Ex. J.

**C. Mr. Laykin's "Negligence" Testimony Is Beyond His Expertise, Failed To Consider Material Record Evidence, Is Misfocused, and Draws Impermissible Legal Conclusions**

Mr. Laykin's proposed testimony regarding Symantec's alleged "negligence" is well beyond his area of expertise. *See* Laykin Report at 23. Rule 702 makes clear that expert testimony is not admissible unless the witness is "qualified as an expert by knowledge, skill, experience, training, or education." *See Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (excluding expert testimony interpreting an economic model where purported "expert" had no training or advanced education in economics); *United States v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992) (excluding accountant's testimony who "was merely calculating numbers . . . that were not independently established as valid").

Mr. Laykin expressly admits in his deposition that Symantec's employees ran the right diagnostic tests on the Spyware Nuker files:

> Q.   Putting aside what you characterize to be the failures that you just described, did Canavan run the right tests?
>
> A.   It appears that Canavan ran the appropriate tests.

Laykin Dep. Tr. at 120:1–5. But then he opines that Symantec is "commercially negligent" because it failed to properly document its analysis or retain the computer file it tested. Both assertions ignore completely contradictory record evidence. Moreover, Mr. Laykin is not qualified to render these views and cannot be permitted to assert such legal conclusions.

7

1    First, Mr. Laykin did not consider material record evidence that Symantec did, in fact, retain

2    and produce to TrekEight the very SpywareNukerInstaller.exe file that its customer submitted and

3    that Symantec analyzed on September 5, 2003. Like all testimony, expert testimony must be based

4    on an adequate foundation and cannot be based on facts that are demonstrably false. *See Heary*

5    *Bros. Lightning Prot. Co. v. Lightning Prot. Inst.*, 287 F. Supp. 2d 1038, 1065–66 (D. Ariz. 2003)

6    (holding that expert's adoption of a hypothetical market composed of two sellers was unreasonable

7    because the record indicated the actual market was significantly larger).

8    Here, Mr. Laykin's report and testimony indicate that Symantec failed to follow industry

9    standards because it did not preserve the software it tested in September 2003. Laykin Report at 21–

10   22; Laykin Rebuttal at 1–2. But the record unequivocally shows that Symantec preserved the very

11   SpywareNukerInstaller.exe computer file it tested, and produced electronic versions of this file and

12   every Spyware Nuker file any customer has ever submitted to the company. *See* October 13, 2005

13   Letter to TrekEight's Counsel, attached to the Fuller Declaration as Ex. K. Notably, Mr. Laykin

14   admits that this information would have altered his "characterization of the process that [Mr.

15   Canavan] followed." Laykin Dep. Tr. at 107:9–108:15.

16   Similarly, Mr. Laykin asserts that Symantec failed to properly document its analysis of the

17   SpywareNukerInstaller.exe computer file. This assertion, too, ignores the testimony from the

18   Symantec engineer who performed the analysis, who expressly indicated that he created his file

19   description contemporaneously with his analysis, and thus the Adware.SpywareNuker description

20   represents the documented observations. *See* John Canavan Deposition Transcript at 80:11–81:2,

21   86:2–87:5, attached to the Fuller Declaration as Ex. L.

22   Equally important, Mr. Laykin simply is not qualified to render an opinion on antivirus

23   industry documentation practices. Mr. Laykin is not a computer scientist, and accordingly cannot

24   comment on best practices from a computer science point of view. Laykin Report, Attachment, at

25   1–5. He considers himself to be an expert in computer forensics. Laykin Report at 1. Nothing in his

26   report or CV indicates that he is qualified to opine on antivirus industry standards or practices. All

27   Mr. Laykin's beliefs regarding proper company practices and standards come from his prior work

28

8

experiences with a single company, Computer Associates. Laykin Dep. Tr. at 112:12–14. He is not aware of the documentation procedures for *any* other antivirus companies. Laykin Dep. Tr. at 46:15–17; 114:3–8. And he is not aware of Symantec's procedures, other than information he gathered from the Internet and from reading Mr. Canavan's deposition. Laykin Dep. Tr. at 46:18–21.

Finally, Mr. Laykin's "negligence" testimony should be excluded because he is trying to proffer a legal conclusion in the guise of expert testimony. Under Rule 704 and controlling precedent, "an expert witness cannot give an opinion as to [a] legal conclusion." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 (9th Cir. 2002). Matters of law are "for the court's determination" and are "inappropriate subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (excluding an expert's conclusions that plaintiffs' reliance on defendants' representations was reasonable and foreseeable). "The terms 'negligent' and 'negligence' have a distinct and specialized meaning in the law different from that present in the common vernacular. It is the responsibility of the Court, not expert witnesses, to define what constitutes negligence as a matter of law." *Vanderpool v. Edmondson*, 2005 U.S. Dist. LEXIS 8611, at *19 (E.D. Tenn. Mar. 23, 2005) (excluding expert opinion regarding whether defendants were negligent); *see also Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 709 (2d Cir. 1989) (reversing jury verdict and remanding for new trial where expert's testimony that defendant was negligent was prejudicial and should have been excluded).

### D. Mr. Laykin Disqualified His "Economic" and "Public Opinion" Comments, which Cannot Be Considered

Mr. Laykin testified at deposition that his opinions regarding Symantec's market position and public opinion are based on his personal beliefs and observations. Laykin Dep. Tr. at 77:11–80:2. As such, his opinions are purely speculative, and are inadmissible as a matter of law. Mr. Laykin testified that he is not "an economist, . . . a statistician, or a pollster." Laykin Dep. Tr. at 78:19–23. Mr. Laykin conducted no market analyses, consumer surveys, or public perception tests. Laykin Dep. Tr. at 77:25–78:3, 78:23–80:2. He has no educational background, experience, or other

9

1   expertise that might qualify him to testify regarding these subjects. Laykin Report, Attachment, at

2   1–5; Laykin Dep. Tr. at 29:11–20. Further, he specifically admits that TrekEight does not proffer

3   Mr. Laykin as an expert on market position or public opinion. Laykin Dep. Tr. at, 76:12–14, 83:2–

4   8. He therefore cannot proffer testimony on these subjects, consistent with Rule 702 and *Daubert v.*

5   *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).

6
   **E.   Mr. Laykin's "Rebuttal" Report Was Not Disclosed Anywhere Close to Court-**
7   **Ordered Deadlines and Cannot Be Considered**

8          In addition to the reasons described above, the testimony described in the Laykin Rebuttal is

9   untimely and should be excluded on that basis. Under the Court's Amended Scheduling Order,

10  expert reports were due February 17, and rebuttal reports were due March 10. TrekEight served

11  Symantec with the Laykin Rebuttal after the close of business on Friday, March 24, two weeks

12  later. Neither TrekEight nor Mr. Laykin can provide any explanation for this late disclosure, and no

13  justification exists. For this reason, the testimony should be excluded. *See Quevedo v. Trans-Pacific*

14  *Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding district court's order excluding

15  expert based on an expert report submitted six weeks after the court-ordered deadline); *Lee v. City*

16  *of Novato*, 2004 U.S. Dist. LEXIS 18195, at *5–*6 (N.D. Cal. Sept. 7, 2004) (excluding expert

17  evidence on summary judgment on grounds that expert's report was submitted two weeks after the

18  court-ordered deadline).

19  **III.   CONCLUSION**

20         For the foregoing reasons, Symantec respectfully requests that this Court preclude

21  TrekEight from presenting at trial the disclosed expert testimony of Erik Laykin.

22  Dated: April 10, 2006                    HELLER EHRMAN LLP

23                                           By _____
24
                                                MICHAEL P. A. COHEN
25
                                             Attorneys for Defendant
26                                           SYMANTEC CORPORATION

27

28
                                          10